**Walter Wray POTEET, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Oct. 7, 1977.

Jack Emory Farley, Public Defender, Linda K. West, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

On June 23, 1976, Walter Wray Poteet was indicted on eight counts of knowingly receiving stolen property. KRS 514.110(1). Each count charged that Poteet had received property stolen from a named individual and contained a listing of the property allegedly received. On August 23, 1976, Poteet was convicted of six counts of knowingly receiving property valued at more than $100.00. On the two remaining counts he was convicted of knowingly receiving stolen property valued at less than $100.00. The maximum penalty imposed by the jury on the six counts of knowingly receiving stolen property of the value of more than $100.00 was a total of 30 years. On each of the counts charging Poteet with knowingly receiving property valued at less than $100.00, the jury imposed a sentence of 12 months in jail and a fine of $500.00. Thereafter, the trial court sentenced Poteet to imprisonment for a term of 20 years pursuant to the provisions of KRS 532.080(4)(c).

Poteet was not satisfied with that result and prosecutes this appeal.

The indictments allege that Poteet knowingly received stolen property consisting of a fishing tackle box, lures, rods and reels, numerous guns, an electric welder, various tools and tool boxes, a chain saw and a chain hoist, another tool box and a quantity of tools and wrenches, an air compressor, welding materials, barbed wire, "chain hoist come along," a Johnson 25-horsepower outboard motor, and various other items. Each of the owners except one testified on behalf of the Commonwealth, and identified each item which had been stolen from them. The Commonwealth also introduced the evidence of the witnesses who admitted stealing the property. They also identified the property as that stolen by them, and testified that they had transferred the stolen property to Poteet. These witnesses at the time they testified were under indictment for the theft of the various items of property. At trial Special Agent John Stocking[1] testified that he went to the "Orange Bar" owned by Poteet for the purpose of conducting an undercover investigation as to Poteet's activities. Stocking purchased from Poteet a number of items. On several occasions Poteet told Stocking that the items were "hot," "safe to sell in the Evansville, Indiana area," or "stolen."

Stocking identified the items introduced at trial as those he had purchased from Poteet.

During his testimony Stocking mentioned the fact that some of the conversations with Poteet concerning the stolen property were recorded. The manner by which the conversations were recorded was through use of a microphone placed on his chest underneath his shirt.

Stocking delivered the tapes to Agent Neihaus. Because the tapes were inaudible, Neihaus sent them to a laboratory in Washington, D.C. by certified mail. When the tapes were returned to Neihaus the cassette recordings of the original tapes were audible. Neihaus testified that he played the tapes in the presence of Special Agent Stocking and delivered them to him. Stocking testified that when he listened to

---

1. Stocking was a Special Agent with the Bureau of Alcohol, Tobacco and Firearms.

the tapes they represented accurately the conversations that took place between him and Poteet. There were four such tapes and all were introduced in evidence and played to the jury.

At the conclusion of all of the evidence presented by the Commonwealth, Poteet took the stand in his own defense. He testified that he dealt in used property. He admitted that on some occasions he would suggest to a customer that a particular item was "hot" in order to enhance its attraction. He denied that he had any actual knowledge that the property in question was stolen. However, he did admit to selling a number of guns and other items to Agent Stocking. Poteet testified that the property he sold Stocking was purchased from Vernon Willis. Poteet purchased numerous items from other individuals. He denied he had actual knowledge the property introduced in evidence was stolen. He referred to himself as a "trader." He did admit that on one occasion he scratched the letters off certain articles he sold to Stocking. Poteet's testimony was supported by the testimony of several witnesses who had dealt with him in the past. They testified that Poteet had never offered to sell them "stolen property."

■ Poteet's first complaint of error is the admission of taped conversations between him and John Stocking, an undercover agent with the Bureau of Alcohol, Tobacco and Firearms. He contends this was error because the Commonwealth's Attorney failed to lay a proper foundation for the admission of the recordings. The crux of his argument in this respect is that the tapes introduced in evidence were copies and not the original recordings. The real thrust of his argument is that the Commonwealth's Attorney failed to show the chain of custody of the tapes during their transfer to and from Washington, D.C. for reproduction. He relies on this court's opinion in *Henderson v. Commonwealth*, Ky., 507 S.W.2d 454 (1974) for the proposition that each link in the chain of custody of evidence must be established. This court is of the opinion that counsel for Poteet is prowling in the dark. Apparently he doesn't understand all he pretends to know about the matter. He misconstrues *Henderson*, supra. The evidence in *Henderson* consisted of blood samples and fingerprints, the integrity of which was not established. Blood samples are not readily identifiable and require strict accounting to insure their integrity and authenticity. Tape recordings, on the other hand, are unique and readily identifiable. In this case, Stocking recorded the conversations between him and Poteet. The tapes were delivered to Agent Neihaus. Neihaus sent them to a laboratory in Washington. They were returned. The cassettes introduced in evidence were audible. Where then was the broken link in the chain of evidence?

Counsel for Poteet raised no issue as to Stocking's credibility, nor did he make any significant attack upon the authenticity of the copies of the cassettes. The real challenge raised by counsel for Poteet is that the one who made the copies for clarification in Washington, D.C. did not testify. Because of that, he contends he was denied the right to confront witnesses against him when the tapes were introduced in evidence and played to the jury. There is no more merit in Poteet's contention that the trial court erred by admitting the tapes into evidence than there would have been had photographs of the cache of stolen property in the possession of Poteet been admitted in evidence. In such a case it would not have been necessary for the photographer to make verification of the photos if it could have been provided by anyone with sufficient knowledge to assure the trial court of the accuracy of the photographs. See *King v. Ohio Valley Fire and Marine Ins. Co.*, 212 Ky. 770, 280 S.W. 127 (1926). When Stocking testified to the accuracy of the conversations in the recordings, their integrity was firmly established.

Poteet's second contention is that the record contained no competent evidence as to

the value of the stolen property of Robert Yerian. There is no merit to that argument. Furthermore, it is refuted by the record. Yerian testified that he was the owner of a solar carbon welding wrench, a welding helmet, an 18-inch pipe wrench and a "chain hoist come along." He testified these items were stolen from him and were either found in Poteet's possession or sold by him.

Yerian was unable to place a value on the pipe wrench, but did value the welding wrench at $30.00, the helmet at $15.00, and an extension cord at $9.00. As to the value of the "chain hoist come along," he fixed its replacement value at $130.00. He also listed on his insurance claim the value of $130.00 for that item. At no time was an objection made to Yerian's testimony in this respect. Because the matter was not then and there brought to the attention of the trial court for a ruling, there was no error. This court notes however, that had the matter been presented to the trial court for proper ruling, there was sufficient evidence to show that Yerian's stolen property knowingly received by Poteet was of the value of more than $100.00.

Finally, Poteet complains that the trial court erred in denying his pre-trial motion for disclosure of any "deal" or "arrangement" made between the Commonwealth and anticipated witnesses who would testify for the Commonwealth. In other words, he was seeking to find out if any "deal" or "arrangement" had been made between the Commonwealth and the witnesses who had stolen the property, and who had indictments pending against them for the theft. The Commonwealth's Attorney denied the existence of any immunity promises, "deals" or "arrangements."

This situation reminds the author of the story of a fiery, young evangelist on the last night of a revival meeting calling sinners to repentance. With all the fervor in his being, the young evangelist said, "Brothers and sisters, in that awful, final day of judgment, there will be weeping, wailing, and gnashing of teeth." One good sister in the rear of the church arose and said, "Brother, I ain't got no teeth." The evangelist said, "Sit down, sister, teeth will be provided." Thus, the Commonwealth's Attorney emphatically said, there are no promises of immunity—there are no deals—there are no arrangements. Poteet offered no evidence to the contrary. As far as this court is concerned, that ended the matter.

Accordingly, the judgment is affirmed.

All concur.