RENDERED: MARCH 23, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0207-DG
2021-SC-0572-DG

COMMONWEALTH OF KENTUCKY                    APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.                              NO. 2020-CA-0515
JEFFERSON CIRCUIT COURT NO. 19-CR-000882-2

ANDREW MCMICHAEL                         APPELLEE/CROSS-APPELLANT

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**<u>AFFIRMING</u>**

On October 22, 2019, Andrew McMichael (McMichael) pled guilty to theft by unlawful taking over $500, but less than $10,000. This charge stemmed from McMichael and a co-defendant removing several pieces of stainless-steel siding from an old, kitchen-less diner and selling them for $155.81, which they split between themselves. As part of his plea agreement, McMichael agreed to pay restitution to the diner's owner, Mosely Putney (Putney). Because McMichael and the Commonwealth could not agree to a restitution sum, the trial court held a combined sentencing and restitution hearing on March 9, 2020.

During the restitution hearing, Putney was the Commonwealth's sole witness. Putney testified that he purchased the diner in early 1990s for "around $25,000." The diner is a 1950s Mountain View modular diner with

stainless steel siding that was custom formed onto it when the diner was assembled. Although the diner lacked a kitchen, Putney testified that he originally intended to renovate the diner and make it a restaurant. However, those intentions were never brought to fruition, and the diner has sat on an outdoor storage lot exposed to the elements for the last fifteen years and is in a significant state of disrepair. Putney testified that, prior to the theft, he believed he could have sold the diner for $30,000 - $60,000. He provided no documentation to support this estimate and testified that he never had a buyer for that amount.

Putney testified that, although much of the siding was later recovered, it was bent during the theft in such a way that it cannot be re-attached to the diner. Putney therefore had a sheet metal and roofing contracting company provide estimates to replace the siding. The first estimate the company provided was the cost to replace only the siding that was removed by McMichael and his co-defendant. The company estimated this would cost a total of $62,493. The second estimate was the cost to replace both the stolen siding and the original siding so that all of the siding would "match." This estimate was $221,800.

On cross-examination, defense counsel pointed out that the criminal complaint in this case stated, "value of diner $3,000," and that this amount was the basis for the underlying charge. Putney denied telling the police that the diner was worth $3,000, and instead claimed that he told the police that amount because he believed that was the value of the stolen siding.

2

Nevertheless, he acknowledged that he "threw out a number" because he did not know the actual scrap value of the siding. He provided no documentation or any other evidentiary support to prove the diner's value prior to the siding being removed or its value after the siding was removed.

McMichael requested that restitution be set at either $155.81, the amount for which he sold the siding, or the $3,000 amount set forth in the criminal complaint. He further contended that the diner was not worth what Putney claimed as, even before the siding was removed, its current state would require significant repair both inside and out to bring it back to a useable condition. The Commonwealth disagreed, arguing that Putney was competent to testify and that his testimony was supported by the estimates provided by the contracting company. The Commonwealth requested that restitution be set at $62,493, the amount required to replace the stolen siding. The trial court agreed with the Commonwealth and ordered McMichael to pay $62,493 in restitution jointly and severally with his co-defendant. McMichael appealed the restitution ruling to the Court of Appeals.

The Court of Appeals reversed, holding that there was insufficient evidence to support the restitution amount.[1] In so ruling, the unanimous Court of Appeals panel provided much needed guidance on how trial courts may reliably determine restitution in cases in which restitution is warranted

---

[1] *McMichael v. Commonwealth*, No. 2020-CA-0515-MR, 2021 WL 1045482 (Ky. App. Mar. 19, 2021).

due to damage to the victim's property.[2]  Neither the Commonwealth nor McMichael challenge the framework established by the Court of Appeals, and we therefore need not discuss it at length.  Suffice it to say, the Court of Appeals held that

> pre- and post-incident values must be established and their difference serve as a cap on recovery.  Here, little or no effort was made to establish pre- or post-theft values of the diner or its siding, much less calculate their difference to serve as a cap on restitution.  We believe these values must be determined, and the cap applied, to set restitution which comports with its intent in order to obtain substantial justice.
>
> Yet another consideration the trial court must apply when calculating restitution is the value of the recovered siding.  Although Putney testified the siding was "worthless," presumably when it came to re-attaching it for use on the diner's exterior, it undoubtedly had some value, even if only as scrap metal.  McMichael is entitled to an offset against his restitution by the value of the recovered siding. . . . Consequently, the value of the returned siding must be established and deducted from the amount of otherwise allowable restitution.[3]

As noted, neither of the parties challenge this framework.  Rather, the sole argument raised by the Commonwealth is that "the Court of Appeals ignored controlling precedent when it determined a property owner's testimony, by itself, was insufficient to establish a restitution award."  The full language from the Court of Appeals' opinion to which the Commonwealth refers states as follows:

---

[2] Kentucky Revised Statute (KRS) 532.350(1)(a) ("'Restitution' means any form of compensation paid by a convicted person to a victim for counseling, medical expenses, lost wages due to injury, *or property damage* and other expenses suffered by a victim because of a criminal act[.]") (emphasis added).

[3] *McMichael*, 2021 WL 1045482, at *8.

Kentucky courts have addressed the establishment of value of stolen property in the context of determining the proper crime charged. In *Allen v. Commonwealth*, 148 Ky. 327, 146 S.W. 762 (1912), the Court observed:

> In cases like this, where the degree of the offense depends upon the value of the property, it often happens that the witnesses will differ as to its value; and, when there is a difference of opinion as to this matter, it is for the jury to form their own conclusion from the evidence as to the value of the property stolen. *Evidence of the cost price of an article is not conclusive as to its value; nor, indeed, is evidence as to its selling price.* The test by which the degree of guilt of the accused is to be determined is *the value of the article at the time it was stolen,* and this value is to be arrived at by the jury from a *consideration of all the facts and circumstances shown in the evidence.* Where the article stolen is in general use, and has what might be called a standard market value, of course the best evidence of the value of such an article is the price at which it sells in the open market. But where the article does not appear to have a standard value in the open market, or its standard value is not shown, the *evidence of its value must be arrived at from facts and circumstances testified to by witnesses who* **qualify** *themselves to speak as to its value.*

*Id.* at 762-63 (emphasis added). Here, the question of the stainless steel's value is not needed to determine the degree of the offense, as that had already been agreed upon; rather, the determination of its value goes to the issue of restitution. Since the stainless steel at issue herein does not appear to have a standard value in the open market, and its standard value was not shown, the evidence of its value must be determined from facts and circumstances testified to by a witness who qualifies himself to speak to its value. The sole witness for the Commonwealth was the diner's owner, Putney; no evidence of his qualifications to testify as to the diner's worth, beyond merely being its owner, was presented.

As previously noted, in [*Fields v. Commonwealth*, 123 S.W.3d 914 (Ky. App. 2003)], we held that "[t]he due-process clauses of the federal constitution require that sentences not be imposed on the basis of material misinformation, and that facts relied on by the

5

sentencing court have some minimal indicium of *reliability beyond mere allegation.*" *Fields*, 123 S.W.3d at 917 (emphasis added) (internal quotation marks and footnotes omitted). Following *Fields*, in [*Wiley v. Commonwealth*, 348 S.W.3d 570, 575 (Ky. 2010)], our Supreme Court further held that "the record must establish a factual predicate for the restitution order." *Wiley*, 348 S.W.3d at 575.

"In the ordinary case, the proper yardstick is the market value of the property at the time and place of the larceny; the original cost of the property or any special value to the owner personally is not considered." 3 CHARLES E. TORCIA, GRADES OF LARCENY— DETERMINATION OF VALUE, WHARTON'S CRIMINAL LAW § 345 (15th ed. 2020) (footnotes omitted). Herein, Putney offered nothing more than his mere opinion of the worth of both the metal and the diner. There was no evidence of the current value of the diner or of the stainless steel at the time it was taken. This is simply insufficiently detailed or reliable to establish a fair restitution computation; due process requires more.[4]

The Commonwealth interprets the foregoing to hold that an owner of damaged property "must provide heightened qualifications—seemingly requiring specific qualifications beyond being an owner with experience and knowledge of the property—and that personal knowledge is no longer sufficient to establish value." In turn, the Commonwealth argues that this holding ignores established precedent that an owner's testimony is competent evidence

---

[4] *Id.* *3-4.

regarding the value of stolen property, citing, in relevant part,[5] *Poteet v. Commonwealth*,[6] *Mitchell v. Commonwealth*,[7] and *Brewer v. Commonwealth*.[8],

We disagree with the Commonwealth's interpretation of the Court of Appeals' holding, and further hold that it comports with each of the precedents cited by the Commonwealth.

To begin, we do not construe the quoted language from *Allen* that "where the article does not appear to have a standard value in the open market, or its standard value is not shown, the evidence of its value must be arrived at from facts and circumstances testified to by witnesses who qualify themselves to speak as to its value," to mean that the owners of damaged property are subject to higher scrutiny regarding their ability to testify as to the value of their property. Rather, it simply means that the owner must be able to provide

---

[5] The Commonwealth also relies on *Commonwealth v. Reed*, 57 S.W.3d 269 (Ky. 2001), and *Meyer v. Commonwealth*, 393 S.W.3d 46 (Ky. App. 2013). Neither case supports its argument.

In *Reed*, there was no dispute as to the *total value* of the stolen property. 57 S.W.3d at 271. Instead, the issue was whether the Commonwealth demonstrated that the specific items ultimately found in the defendant's possession were worth the requisite amount to support the charge against him. *Id.*

In *Meyer*, the defendant stole two projectors from the University of Kentucky. 393 S.W.3d at 55-6. The evidence as to their value came not from their owner, but from an employee of the university who worked in Information Technology in Audio/Visual Services. *Id.* at 56.

[6] 556 S.W.2d 893 (Ky. 1977).

[7] 538 S.W.3d 326 (Ky. App. 2017).

[8] 632 S.W2d 456 (Ky. App. 1982).

7

"reliable facts [and circumstances] . . . [that provide] some minimal indicum of reliability beyond mere allegation."[9] This is supported by the Court of Appeals' later statement that "Putney offered nothing more than his mere opinion of the worth of both the metal and the diner."

Indeed, we have long held that "the testimony of the owner of stolen property is competent evidence as to the value of the property."[10] Putney could accordingly, theoretically, be qualified to testify to the value of the diner before and after the theft, and as to the value of the recovered stainless-steel siding. But to do so his testimony must be supported by facts and circumstances providing some minimal indicum of reliability beyond mere allegation. This, we discern, is the "qualification" the Court of Appeals refers to.

For example in *Poteet*, the Defendant was convicted of receiving stolen property valued at more than $100.[11] On appeal, the defendant asserted that there was insufficient evidence as to the value of the stolen property, in particular: a welding wrench, a welding helmet, an 18-inch pipe wrench, and a "chain hoist come along."[12] The owner of the items testified that the welding wrench was worth $30 and the helmet was worth $15.[13] More importantly for

---

[9] *Wiley v. Commonwealth*, 348 S.W.3d 570, 575 (Ky. 2010) ("When ordering restitution, a trial court must base an award on reliable facts. . . . although a lower standard of due process applies at sentencing, the facts relied on by the court must have some minimal indicum of reliability beyond mere allegation.").

[10] *Reed*, 57 S.W.3d at 270 (citing *Poteet*, 556 S.W.2d at 896).

[11] 556 S.W.2d, at 894.

[12] *Id*. at 895-96.

[13] *Id*. at 894.

our purposes, the victim testified that the chain hoist come along was worth $130, supported by his insurance claim on that item for $130.[14] The *Poteet* Court held that "there was sufficient evidence to show that [the victim's] stolen property knowingly received by [the defendant] **was of the value of more than $100**."[15] Accordingly, the owner's testimony was more than just a mere allegation as to their value: he provided proof that at least one of the items was worth $130 in the form of an insurance claim. This would of course mean that the aggregate value of all the items taken exceeded $100.

Similarly, in *Mitchell*, the defendants stole several pieces of jewelry from the victim.[16] At their restitution hearing, the victim testified that "she obtained the value of the missing jewelry listed by researching their value on Amazon.com and that she determined the value by using the median prices for the items."[17] On appeal, the defendants argued that the victim's testimony as to the value of the jewelry based on her internet research was insufficient to constitute substantial evidence, and that "the Commonwealth was required to prove their value with photographs, insurance records, receipts or other documented proof of the value and quality of the missing jewelry."[18] The Court of Appeals disagreed:

> Even in the guilt phase, the Supreme Court has ruled that the testimony of the owner of stolen property is competent evidence as

---

[14] *Id.*

[15] *Id.* at 896 (emphasis added).

[16] *Mitchell,* 538 S.W.3d at 328.

[17] *Id.*

[18] *Id.* at 329.

to the value of the property. The same is true in restitution hearings where the standard is preponderance of the evidence, not the reasonable doubt standard. While it may have been preferable for the Commonwealth to produce documentation, it was not required. . . . If [the defendants' argument] was taken to its logical conclusion, restitution could never be imposed for an item of jewelry that had not been photographed, appraised, measured, weighed and insured. Although they have pointed to some weaknesses in the Commonwealth's evidence, [the victim] had sufficient reliable information, based on her memory and the photographs, to find comparable items on the Internet. We are required to give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." [CR] 52.01; as a sign of her reliability, [the victim] did not choose the highest-priced Internet comparables in assigning values to her jewelry.[19]

Finally, in *Brewer*, a case from 1982, the defendant was convicted of stealing a two-month-old 1980 Suzuki motorcycle, and argued on appeal that there was insufficient evidence that the motorcycle was worth more than $100.[20] The Court of Appeals disagreed, stating:

The owner of the motorcycle can certainly state his opinion as to the value of his property. His testimony was not unreasonable since the motorcycle, only two months old when stolen, had only 3000 miles on it and was unwrecked. There was sufficient descriptive testimony about the motorcycle which would enable the

jury to make an informed conclusion that the cycle was worth more than $100.00 in value.[21]

Accordingly, the particular circumstances in *Brewer* were such that the owner's testimony as to the motorcycle's value exceeding $100 was sufficient.

---

[19] *Id.* (internal quotation marks and citations omitted).

[20] 632 S.W.2d at 457.

[21] *Id.*

In this case, Putney provided absolutely no evidence as to the diner's worth at the time of the theft, the diner's worth after the theft, or the value of the recovered stainless-steel, let alone evidence or circumstances that would support those respective values. On remand, if he can provide some reliable evidence as to those values, he would certainly be qualified to testify as to those amounts given that he is the owner of the diner. At bottom, we do not interpret the Court of Appeals as altering in anyway our precedents that state an owner may give testimony as to the value of his or her property. Instead, the Court of Appeals found fault in the fact that Putney had provided **nothing** to suggest that he was qualified to testify as to the value of the diner before and after the theft or the value of the recovered sheet metal. This is consistent with our precedents as provided above.

Consequently, we decline McMichael's invitation to uphold the Court of Appeals' holding on the basis that it drew a distinction between items that are "merchandise," i.e., items found in "standard markets" that have easily discernable values—televisions, jewelry, tools, etc.—and items that are not found in standard markets like the antique diner at issue herein. We further decline to hold that owners of such unique property should be "qualified" to testify to the value of their property under the factors espoused in *Summe v. Gronotte*.[22] This would needlessly complicate restitution determinations because, regardless of what the item at issue in a given case is, a restitution

---

[22] 357 S.W.3d 211 (Ky. 2011) (relying on *Commonwealth, Dep't of Highways v. Slusher*, 371 S.W.2d 851 (Ky. 1963)). *Slusher* held that "[a] witness, to be qualified to testify as to the value of realty, must know the property to be valued and the value of

11

determination must be based on reliable facts that have some minimal indicum of reliability beyond mere allegation. Such evidence was altogether absent in this case, and that absence formed the basis for the Court of Appeals' holding.

## CONCLUSION

Based on the foregoing, we affirm the Court of Appeals and remand this case to Jefferson Circuit Court for a retrial on restitution consistent with both this opinion and that of the Court of Appeals.

VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., sitting. All concur. Thompson, J., not sitting.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General

COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Christopher Barrett Thurman
Louisville Metro Public Defender

Leo Gerard Smith
Louisville Metro Public Defender

---

the property in the vicinity, must understand the standard of value, and must be possessed of the ability to make a reasonable inference."